# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| United States of America ) | |
| ) | |
| v. ) | Case No. 16-606 MJ |
| Moises Enriquez-Castro, ) | |
| a.k.a Moises Leonardo ) | |
| A# 209 798 772 ) | |
| *Defendant* | |

## CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief.

### Count 1:

On or about December 29, 2016, at or near Eloy, in the County of Pinal, in the District of Arizona, Moises Enriquez-Castro, knowingly and with reckless disregard of the fact that certain aliens, Ruben Salvador Aquino-Bautista and Heladio Ruiz-Perez had come to, entered, and remained in the United States in violation of law, did transport and move said aliens within the United States by means of transportation and otherwise, in furtherance of such violation of law; in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii).

**See Attached Statement of Probable Cause Incorporated By Reference Herein.**

REVIEWED BY: SAUSA Brett A. Day

_____
Signature of Complainant
Sheldon W. Schmitt
U.S. Border Patrol Agent

Sworn to before me and subscribed in my presence, December 30, 2016, at Phoenix, Arizona.

_____
Signature of Judicial Officer
Honorable Michelle H. Burns
United States Magistrate Judge

# STATEMENT OF PROBABLE CAUSE

I, Sheldon W. Schmitt, being duly sworn, hereby depose and state as follows:

1. Your affiant is a Border Patrol Agent with U.S. Border Patrol, U.S. Customs and Border Protection. I have learned about this investigation and the facts contained therein from direct participation in the investigation and from the reports and communications of other agents.

2. On December 29, 2016, Border Patrol Agent Scott Betcher was performing his assigned duties with the Casa Grande Border Patrol Station. At approximately 2:00 PM, Agent Betcher responded to assist Arizona Department of Public Safety Troopers with a vehicle accident along Interstate 10 near mile marker 203. DPS troopers reported the occupants that were in the vehicle were suspected illegal aliens and they needed Border Patrol assistance with conducting immigration inspections.

3. At approximately 2:15 PM, Agent Betcher arrived to I-10, mile marker 203 and made contact with DPS Trooper Shewey who was in charge of the accident scene. Trooper Shewey quickly briefed Agent Betcher on the circumstances and events leading up to the accident. Trooper Shewey stated he had attempted to conduct a vehicle stop for multiple traffic violations. After the vehicle stopped and Trooper Shewey exited his patrol vehicle, the vehicle then sped off. Trooper Shewey stated it took him several miles to catch back up. At that time, the vehicle then exited at exit 203, where it went through the intersection without stopping and struck a large electrical box and then

1

proceeded to roll over. Trooper Shewey made contact with the vehicle and discovered a total of six occupants. The vehicle consisted of the driver, later identified as Moises Enriquez-Castro, a front seat passenger and four occupants in the backseat passenger area.

4. While on scene, Agent Betcher observed a silver in color Volkswagen Touareg that had significant body damage and was destroyed beyond repair or use. The vehicle was being loaded onto a tow truck. Agent Betcher noted there was a group of four aliens that had been seated together and they had just been evaluated by members of the Eloy Fire Department (EFD). Agent Betcher was informed by EFD that the four passengers from the rear of the vehicle each declined medical treatment and claimed to not be suffering any injuries at this time. Agent Betcher was also informed that the driver and front seat passenger also declined any medical treatment.

5. DPS Trooper Shewey had separated the driver and front seat passenger from the other four occupants until Border Patrol Agents arrived to conduct interviews. It was later determined by Agent Betcher that both the driver, Moises Enriquez-Castro and the front seat passenger, are citizens of Mexico from Caborca, Sonora, Mexico. Both claimed to be illegally present in the United States and to have entered at an earlier date and time while not having been inspected by an immigration official. Furthermore, both stated they do not possess, nor have ever applied for, any documentation allowing them to enter, reside or pass through the United States.

6. The four rear seat occupants all claimed to be citizens of Mexico born in Oaxaca,

Mexico. All four rear seat occupants claimed to be illegally present in the United States and to have entered at an earlier date and time while not having been inspected by an immigration official. Furthermore, they all stated they do not possess or have ever applied for any documentation allowing them to enter, reside or pass through the United States. While conducting immigration inspections on all of the vehicle's occupants, Agent Betcher noticed the driver and front seat passenger were in different attire compared to the four rear seat passengers. The driver and front seat passenger were cleanly dressed and appeared to be well groomed in comparison to the other four occupants who were wearing tattered camouflage clothing over the top of their other clothes and they appeared to have just finished hiking through the desert. These characteristics are common with people who have recently been picked up along the road side are being smuggled further into the United States.

7. Trooper Shewey informed Agent Betcher that the initial traffic stop, flight, and then the ensuing accident were all captured on video taken from his patrol vehicle. Trooper Shewey stated he also had photographs of the collision scene itself. Trooper Shewey further stated he had initially attempted to stop the vehicle for following too closely to another vehicle and improper tinting of windows. These are violations of Arizona Title 28 traffic law, 28-730A and 28-959.01C. Trooper Shewey explained to Agent Betcher that stopping vehicles for following too closely is currently an enforcement priority for DPS due to a high number of reported vehicle accidents along Interstate 10.

8. At that time, the driver and front seat passenger were kept separate from the other occupants and they were all transported to the Casa Grande Border Patrol Station for further interviews and processing.

9. While at the Casa Grande Border Patrol Station, the driver, Moises Enriquez-Castro, was read his Miranda Rights via Customs and Border Protection (CBP) form I-214 Warning as to Rights. Enriquez-Castro stated that he understood his rights and declined to provide a statement.

10. While at the Casa Grande Border Patrol Station, Agent Roy Villamil, as witnessed by Agent Jesus Rosales, conducted a video recorded statement provided by Heladio Ruiz-Perez. The following is a written synopsis of Ruiz-Perez' statement:

11. Ruiz-Perez stated this wasn't his first apprehension by Border Patrol and admitted to previously crossing into the United States and acting as a foot guide. However, Ruiz-Perez stated that he was not acting as a foot guide on this occasion

12. Ruiz-Perez stated that they paid $8,000.00 MXN as a mafia fee and was to be charged roughly $5,000.00 USD in order to be smuggled. Ruiz-Perez further stated he crossed the International Boundary Fence (IBF) with three other individuals and an unknown foot guide.

13. Ruiz-Perez stated that his group walked for approximately three or four days when they approached a road and were told to wait. Ruiz-Perez stated that they would be later picked up at that location. Ruiz-Perez stated that eventually a grey colored vehicle came around noon and he got into the car, along with three other individuals.

4

Ruiz-Perez then stated that in the vehicle, he sat behind the front seat passenger. Ruiz-Perez also mentioned that they never stopped during their drive and that nobody spoke much in the car.

14. Ruiz-Perez stated that they were in the car briefly before an officer tried to pull them over. Ruiz-Perez stated that his driver didn't want to stop and ignored the pleas of the other occupants in the car asking to slow down and stop. Ruiz-Perez stated that because the driver refused slow down, he eventually lost control and flipped the car.

15. Ruiz-Perez was also shown a photographic line-up of six individuals numbered one to six and asked if he recognized any of the subjects in the photos. Ruiz-Perez was able to identify subject number three (3) (driver; Moises Enriquez-Castro) as somebody he recognized but couldn't positively say how he knew him or from where.

16. While at the Casa Grande Border Patrol Station, Agent Jesus Rosales, as witnessed by Agent Roy Villamil, conducted a video recorded statement provided by Ruben Salvador Aquino-Bautista. The following is a written synopsis of Aquino-Bautista's statement:

17. Aquino-Bautista stated that he is not under any medication, drug or alcohol during the interview. Aquino-Bautista freely admitted to being a citizen and national of Mexico who does not possess any immigration documents, pending or otherwise, that would allow him to enter into, pass through or remain in the United States legally.

18. Aquino-Bautista state that he made smuggling arrangements with a human smuggler who would get him to Los Angeles, California for $4,500.00 USD. Aquino-Bautista

5

stated the smuggler never gave out his name. Aquino-Bautista stated that he paid $8,000.00 MXN, before he could be transported to the desert where he would cross into the United States. Aquino-Bautista stated that he crossed the International Border Fence (IBF) four days prior to being taken into custody by a Border Patrol Agent. Aquino-Bautista also stated he crossed with a group of five individuals, including his foot guide.

19. Aquino-Bautista stated the foot guide had a cellphone, but used it in private, away from the group. Aquino-Bautista stated that after walking in the desert for four days, his group arrived to an area where they were later picked up by a gray small SUV. Aquino-Bautista described the area as being an open desert area with no buildings around.

20. Aquino-Bautista stated he was ordered by the foot guide to board the vehicle. He then stated that when entered the vehicle, there were two individuals already in the vehicle, the driver and the front seat passenger. Aquino-Bautista described both individuals as being light skinned and of young age. Aquino-Bautista stated that as far as he knew, the vehicle would take him to Los Angeles. Aquino-Bautista believed the driver and the front passenger knew they were picking up illegal immigrants and that even though there was no direct payment to the driver, it was all part of the smuggling arrangements he made prior crossing the IBF.

21. Aquino-Bautista stated that he and a young woman from his group were told by the driver to move to the back of the vehicle, to the cargo area behind the passenger seats,

to lay down and stay put. Aquino-Bautista stated that the vehicle drove for approximately fifteen minutes before he heard the vehicle's engine revving up and getting speed. Aquino-Bautista stated that at that point he knew the vehicle was in being chased by police and even though he feared for his life he could not do anything to stop the vehicle.

22. Aquino-Bautista went on to state that after he smelled burning tires, the vehicle rolled over, he tumbled in the back cargo compartment of the vehicle and as soon as the vehicle stopped the police officers pulled them out of the vehicle and apprehended them.

23. Aquino-Bautista was shown two photo line-ups, with photos of six different subjects numbered one (1) to six (6) affixed inside of each photo line-up. Aquino-Bautista was asked that if he recognized a person in the line-ups, to explain who that person was and how he knows that person. Aquino-Bautista was told that he was under no obligation to point someone out and that it was perfectly fine if he did not recognize anyone in the group of pictures.

24. After looking at the first photo line-up, Aquino-Bautista was able to identify the subject in box number three (3) from the photo line-up, as possibly being the driver of the vehicle Aquino-Bautista was in. Box number three (3) corresponds to Moises Enriquez-Castro.

25. Aquino-Bautista affirmed that all statements were given freely and voluntarily, and that no threats, coercion, and/or promises were made.

26. Based on the above stated facts, your affiant submits that there is probable cause to believe that on or about December 29, 2016, at or near Eloy, Arizona in the County of Pinal, in the District of Arizona, Moises Enriquez-Castro, knowingly and with reckless disregard of the fact that certain aliens, Ruben Salvador Aquino-Bautista and Heladio Ruiz-Perez, had come to, entered and remained in the United States in violation of law, did transport and move said alien within the United States by means of transportation and otherwise in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

_____
Signature of Complainant
Sheldon W. Schmitt
U.S. Border Patrol Agent

Sworn to and subscribed before me this 30th day of December, 2016.

_____
Signature of Judicial Officer
Honorable Michelle H. Burns
United States Magistrate Judge